**NATIONAL LABOR RELATIONS BOARD v. SERVICE TRADE CHAUFFEURS, SALESMEN & HELPERS, LOCAL 145 et al.**

No. 46, Docket 21713.

United States Court of Appeals Second Circuit.

Argued Dec. 13, 1950.

Decided July 31, 1951.

A. Norman Somers, Asst. Gen. Counsel, Robert N. Denham, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Dominick L. Manoli, and Albert M. Dreyer, Attorneys, National Labor Relations Board, all of Washington, D. C., for petitioner.

Gordon, Fitzgerald & Riley, William S. Gordon, Jr., and Mary C. Fitzgerald, all of Hartford, Conn., for respondents.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. Recent decisions of the Supreme Court dispose of the Union's contentions (a) that the events here in question did not affect interstate commerce sufficiently to confer jurisdiction on the Board;[1] and

1. N. L. .R. B. v. Denver Building Council, 341 U.S. 675, 683–685, 71 S.Ct. 943; International Brotherhood of Electrical Workers v. N. L. R. B., 341 U.S. 694,

(b) that the picketing here amounted to no more than the expression of opinion which is protected by § 8(c) of the Taft-Hartley Act, 29 U.S.C.A. § 158(c).[2]

2. We have here a problem involving the rights of neutrals in a lawful economic war between an employer and a union. The Taft-Hartley Act does not completely shelter neutrals—in this case, so-called "secondary" employers. If it did, strikes would often be hopelessly crippled. Instead the Act recognizes and undertakes to reconcile the competing claims of unions to strike and of bystanders to be free of harm from so-called "secondary boycotts." [3] By § 13,[4] the right to strike is preserved "except as specifically provided for herein," while under § 8(b), it is an unfair labor practice for a labor organization or its agents "to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring * * any employer or other person * * * to cease doing business with any other person; (B) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9 * * *." [5]

■■■ The Supreme Court has recently pointed out that § 8(b)(4) does not outlaw a traditional primary strike. The Court said: "The limitation of the com-plaint to an incident in the geographically restricted area near the mill is significant, although not necessarily conclusive. The picketing was directed at the Kaplan [primary] employees and at their employer in a manner traditional in labor disputes. Clearly, that, in itself, was not proscribed by § 8(b)(4). Insofar as the union's efforts were directed beyond that and toward the employees of anyone other than Kaplan, there is no suggestion that the union sought *concerted* conduct by such other employees. Such efforts also fall short of the proscriptions in § 8(b)(4). * * * A union's inducements or encouragements reaching individual employees of neutral employers only as they happen to approach the picketed place of business generally are not aimed at concerted, as distinguished from individual, conduct by such employees. Generally, therefore, such actions do not come within the proscription of § 8(b)(4), * * *." N. L. R. B. v. International Rice Milling Co., 341 U.S. 665, 671, 71 S.Ct. 961, 964. We take this to mean that a union may lawfully inflict harm on a neutral employer, without violating § 8(b)(4), so long as the harm is merely incidental to a traditionally lawful primary strike, conducted at the place where the primary employer does business.

The trouble lies in determining what is "incidental" and "primary" in a case like this where the primary employer's business, travelling about on wheels, rolls up to the secondary employer's door or onto his premises. To hold that, in such circumstances, the union may not there picket the primary employer in any way, because the secondary employer might thereby be

699, 71 S.Ct. 954; Local 74, United Brotherhood of Carpenters' Union v. N. L. R. B., 341 U.S. 707, 712, 71 S.Ct. 966.

2. International Brotherhood of Electrical Workers v. N. L. R. B., 341 U.S. 694, 700–705, 71 S.Ct. 954; Local 74, United Brotherhood of Carpenters' Union v. N. L. R. B., 341 U.S. 707, 712–713, 71 S. Ct. 966; N. L. R. B. v. Denver Building Council, 341 U.S. 675, 690–691, 71 S.Ct. 943.

3. Cf. N. L. R. B. v. Denver Building Council, 341 U.S. 675, 692, 71 S.Ct. 943.

4. 29 U.S.C.A. § 163: "Right to strike preserved.

"Nothing in this subchapter, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right."

5. 29 U.S.C.A. § 158(b) (4) (A), (B).

injured, would be virtually to deprive the union of a powerful weapon which Congress meant to preserve.

■ .3. . Since its decision in the instant case, the Board, in subsequent decisions, has evolved criteria for determining what constitutes legitimate picketing where the business of a primary employer has a roving situs and where the picketing affects secondary employers.[6] The Board's several enunciations of these criteria perhaps have not been wholly consistent. However that may be, we regard as a sound interpretation of the Act the principles laid down in Sailors' Union of the Pacific, 92 N.L.R.B. No. 93. There the Board said that "picketing of the premises of a secondary employer is primary if it meets the following conditions: (a) The picketing is strictly limited to times when the situs of dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at the situs; (c) the picketing is limited to places reasonably close to the location of the situs; and (d) the picketing discloses clearly that the dispute is with the primary employer."

■ As those criteria had not yet been formulated when the Board decided the instant case, the Board did not here apply them or make findings pertinent thereto, and accordingly we are now in no position adequately to review its decision. We therefore remand the case to the Board (except as otherwise noted in point 4 of this opinion). The Board should receive further material evidence, if available, which will aid it in making its further findings and its determination.

If this picketing met the criteria announced in the Sailor's Union case, then it was not unlawful because employees of the secondary employers, or employees of other employers, due to their habitual unwillingness to cross picket lines, refused to do so, for such effects are within the realm of the "incidental." Nor, if otherwise lawful, was the picketing unlawful because it induced or encouraged concerted conduct, not of the neutral employers' employees, but of their customers, since the prohibition of § 8(b)(4) does not extend to such solicitation of customers.

■ 4. The Union clearly violated the Act in picketing the Read warehouse. For no trucks operated by the primary employer were present at the warehouse, nor were any of its employees there engaged in the primary employer's business. The Board's findings, amply supported by the evidence, make it plain that, by this picketing, the Union induced Read's warehouse employees to engage in a concerted refusal in the course of their employment to perform their customary services—*i.e.*, to quit work—and that they did quit, in part at least, because they were so induced by this picketing. The Board was also clearly right in concluding that the objects of the Union's inducement were those proscribed by (A) and (B) of § 8(b)(4)—namely, to force Read to cease doing business with the primary employer and to force the primary employer to recognize the Union as the representative of its employees, although the Union had not been certified as such a representative. To that extent, therefore, the Board's decision was correct and will now be enforced.

Enforcement granted in part; otherwise the case is remanded for proceedings in conformity with this opinion.

---

6. International Brotherhood of Teamsters Local No. 807 (Schultz Refrigerated Service, Inc.), 87 N. L. R. B. 502; International Brotherhood of Teamsters Local 807 (Sterling Beverages, Inc.), 90 N.L.R.B. No. 75; Sailors' Union of the Pacific (Moore Dry Dock Co.), 92 N.L. R.B. No. 93.