Bernard L. ALPERT, Regional Director of First Region of National Labor Relations Board, for and on behalf of NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 660, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, and its agent George Sabo, Respondents.

Civ. No. 7583.

United States District Court
D. Connecticut.

Jan. 22, 1959.

W. G. McCullough, James M. Fitzpatrick, N.L.R.B., Boston, Mass., for petitioner.

Norman Zolot, Hamden, Conn., for respondents.

ANDERSON, District Judge.

Bernard L. Alpert, Regional Director of the First Region of the National Labor Relations Board, filed a petition for an injunction under Section 10(*l*) of the National Labor Relations Act, 29 U.S.C.A. § 160(*l*), against respondents, Local 660, International Brotherhood of Electrical Workers, AFL-CIO, a labor organization, and its business agent, George Sabo. The petition is based on a charge filed with the N. L. R. B. by Traffic Safety, Inc. (hereinafter called Traffic), a corporation located in Naugatuck, Connecticut. This court has jurisdiction of the subject matter and the parties.

Traffic is in the business of selling, installing and servicing traffic signals and street lighting equipment. It currently holds a subcontract from Oneglia & Gervasini, Inc., referred to at the hearing as O & G, a general contractor for the State of Connecticut on the relocation of Connecticut Routes 8 and 68 in the City of Naugatuck. The nature of the project, the amounts of money involved, and the proportion of the goods bought from sources outside the State of Connecticut establish firmly that the unfair labor

practices alleged here affect interstate commerce within the meaning of the Act.

The substance of the Board's petition is that the Union, when it picketed at the O & G location because of a dispute between the Union and Traffic, violated Section 8(b)(4)(A). This dispute arose because Traffic hires non-union employees. While Traffic itself had several times sought to sign a contract with the Union, it was unwilling or unable to post a bond demanded by the union as security for the payment of wages and the Union, therefore, refused to accept Traffic as a union contractor. This was the situation in November, 1958, when respondent Sabo became aware that Traffic was an electrical subcontractor on the O & G project. Traffic had qualified as a subcontractor on this state highway project, but its employees were not union members because the Union either refused to permit them to join the union or to permit union members to work for Traffic. Because the employees were non-union, Sabo placed a picket at the site of the O & G job for the purpose of persuading neutral employers, including O & G, not to make future contracts with Traffic. This well illustrates the almost fatal difficulties encountered by new and small enterprises, of limited financial resources, in gaining a toe-hold on existence. Be that as it may, it was this placing of the picket which led to the institution of the present proceeding.

The pertinent part of Section 8(b)(4) (A) reads as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \* \*

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal \* \* \* where an object thereof is:

"(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; \* \* \*." 29 U.S. C.A. § 158(b)(4)(A).

In order to find for the petitioner, therefore, the court must find that there is probable cause to believe that Local 660 or George Sabo induced or encouraged the employees of someone other than Traffic to engage in a strike or concerted refusal to work, with the object of putting pressure on Traffic. It is not enough that respondents wanted to put pressure on Traffic; they must be found to have done so in a way proscribed by the Act. N. L. R. B. v. Business Machine and Office Appliance Mechanics Conference Board, 2 Cir., 1955, 228 F.2d 553, 559.

The facts connected with the picketing are largely undisputed. On November 13, 1958, Traffic began its installations on the Naugatuck project, and it continued this work through part of November 14th. At this point, having concluded its preliminary work, it ceased operations pending completion of additional preparatory work by O & G. Traffic was not to be recalled for further work until March, 1959.

On November 17, 1958, respondent Sabo approached Deiro Celadon, the O & G project superintendent, to find out if the electrical installation was being done by Traffic. Beginning on November 24th and continuing intermittently until December 8th, the Union placed a picket at the project site. The picket was instructed not to speak to anyone, but to refer all inquiries to Sabo; and he carried a sign which read:

"The Electrical
Installation Being
Done On This
Project Is
Unfair
Local Union
660 IBEW"

Although the picket walked along the highway in a place where he might be seen by the employees working on the

job, he never crossed the entrances and exits used by deliverymen or workers, and no work stoppage or other concerted refusal to work ever resulted from the picketing.

The petitioner argues that the picketing per se constituted a violation of 8(b)(4)(A), since it occurred at the site of the secondary employer's project when the primary employer's workers were not present. See Moore Dry Dock Co., 92 N.L.R.B. 547. But the court must consider whether in the entire context of the matter the Union's conduct was an inducement to a work stoppage by secondary employees. N. L. R. B. v. International Rice Milling Co., 1951, 341 U.S. 665, 670, 71 S.Ct. 961, 95 L.Ed. 1277; Retail Fruit & Vegetable Clerks Union Local 1017; Retail Clerks Intern. Ass'n, A.F.L.-C.I.O. v. N. L. R. B., 9 Cir., 1957, 249 F.2d 591. The facts show that the Union made a particular effort to see to it that there was no such stoppage or refusal to work. Sabo contacted the representatives of several of the other unions whose men were on the job and told them that no work stoppage was intended. When contacted by agents of other unions who questioned the purpose of the picket, Sabo told them the same thing.

Furthermore, the picket was strategically placed. He arrived at the site after the workers had reported, and left before quitting time. He confined the area of his walking in order not to cross the paths used by those making deliveries. There was in fact no work stoppage or other concerted refusal to work.

The Board contends that the picketing was unlawful because the sign carried did not clearly identify the employer with whom the union had a dispute. See N. L. R. B. v. Service Trade Chauffeurs, Salesmen & Helpers, Local 145, 2 Cir., 1950, 191 F.2d 65, 68. It is true that the sign was not worded as carefully as it ought to have been, under the authorities. But there is no evidence that anyone was misled by it. While the success or failure of a picket line is not determinative of its legality, it is some evidence, along with other circumstances, of its tendency to cause a work stoppage. N. L. R. B. v. Local 50, Bakery and Confectionery Workers, 2 Cir., 1957, 245 F.2d 542, 549 note 6. It is also true that a strike need not have occurred to indicate a violation of the Act. N. L. R. B. v. Associated Musicians, 2 Cir., 1955, 226 F.2d 900. But this is because it is the *inducement* to strike that counts. N. L. R. B. v. Laundry, Linen Supply & Dry Cleaning Drivers Local No. 928, 9 Cir., 1958, 262 F.2d 617. Where the union accompanies its picketing with a course of conduct aimed at avoiding any stoppage and negates inducement, no violation of the Act can be found. The weight of the evidence in this case indicates that the purpose of the Union was not to cause a work stoppage, but to warn other contractors on jobs in the immediate area not to employ Traffic as an electrical subcontractor. Neither this purpose, nor the method employed, is prohibited by Section 8(b)(4)(A). See N. L. R. B. v. Business Machine and Office Appliance Mechanics Conference Board, supra; N. L. R. B. v. Local 50, Bakery and Confectionery Workers International Union, supra; cf. Rabouin v. N. L. R. B., 2 Cir., 1952, 195 F.2d 906. It should be understood by the Union, however, that if the picketing is to be resumed in the future, the sign used should indicate more clearly the nature of the dispute and with whom it exists.

Since the petitioner has not shown probable cause to believe a violation of the Act occurred, the petition for preliminary injunction is denied; this denial is without prejudice, however, to the right of petitioner to renew the application if future events require it.