Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 294, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, Nicholas Robilotto, Edward Smith and Louis Bonomo, Respondents.

Civ. No. 7411.

United States District Court
N. D. New York.
March 7, 1959.

10. Rule 12(h) F.R.Civ.Proc. (28 U.S.C.A. § 2072, Rules 1–16).

11. Ibid.

**130**

Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, Samuel M. Kaynard, Chief Law Officer, Region 2, James F. Foley, James M. Fitzpatrick, Attys., N. L. R. B., Washington, D. C., for petitioner.

Harry Pozefsky, Gloversville, N. Y., for respondents.

**JAMES T. FOLEY, District Judge.**

The petitioner, on behalf of the National Labor Relations Board, seeks a temporary injunction against the named respondents, a local teamsters union and its agents. Such request for injunction is not extraordinary and has the authorization and sanction of statutory law (Section 10(*l*), National Labor Relations Act, as amended, 29 U.S.C.A. § 160(*l*)). It is also clear and settled that the function of the District Court is a limited one, merely to preserve the status quo until the final determination of the National Labor Relations Board with respect to the unfair labor practice charged against the respondents. Such function is limited to ascertaining whether the Director could have "reasonable cause to believe" that the charges filed were true and to granting such equitable relief "as it deems just and proper". Douds v. Milk Drivers & Dairy Employees' Union, 2 Cir., 248 F.2d 534, 537; Le Bus v. Locals 406 et al., D.C.E.D.La., 145 F.Supp. 316; Jaffee v. Henry Heide, D.C.S.D.N.Y., 115 F.Supp. 52, 57. Such principles are now simple doctrine, and to apply them to the factual situation here which has little substantial dispute, would seem to be an easy task. However, previous rulings of the Board and the Courts in situations such as we have make the problem complex and difficult of solution. There is the warning throughout these decisions that under certain circumstances the problem is a perplexing one with no easy mechanical or rigid formula present or applicable. Sterling Beverages, Inc., 90 N.L.R.B. 401, 402; Moore Dry Dock Co., 92 N.L.R.B. 547, 549; N. L. R. B. v. Local Union No. 55 et al., 10 Cir., 218 F.2d 226, 230–231; Le Bus v. Local 406, supra, 145 F.Supp. at page 316. A fine line of distinction has been made in the varying factual situations by the Board and the Courts and such line at times seems blurred. The Board has held similar secondary picketing as violative of Section 8(b) (4) (A) of the Act with the hopeful statement "The line must be drawn somewhere, and this is where we draw it". Sterling, supra, 90 N.L.R.B. at page 403. Obviously, the purpose of such statement has not yet been accomplished with any definiteness or certainty.

The Company involved in the labor dispute with the Union,—and I have no concern with the merits of such dispute, —is the K-C Refrigeration Transport Co. Inc. of Cohoes, New York. Its principal office and warehouse occupies 60% of a New York Central Railroad warehouse in Cohoes, and it also rents a garage nearby in Cohoes for the storage and repair of its eight refrigerated trucks. Its business is mainly to load food products, mostly meats, from railroad box cars at the warehouse and transport such items throughout the area of Albany and Troy to leading meat packers and retailers. At a hearing before the Court on the petition, it was developed that most of the time of the three K-C drivers was spent throughout the day on this pick-up and delivery route. They would go to the K-C Cohoes warehouse in the morning, go out on their route of about eighty stops throughout the day, and then would return the truck to the warehouse at night for it to be loaded again for the next day's deliveries. The K-C Company is a family group of six persons, five of whom actually work in its transport business, and beside the three drivers employs at the warehouse three loaders, a mechanic at the garage who doubles as a driver, a bookkeeper and an office manager. When the labor trouble erupted the three drivers walked out and began picketing the warehouse and garage in Cohoes. The petitioner has no complaint at all nor does he seek to any extent to restrain or limit this primary picketing at the warehouse and garage.

The next step brings the complications. The striking drivers and other volunteers from the Union then began to follow the trucks to major stops in the Troy-Albany vicinity of the trucks as they loaded or unloaded. Their picket signs declared their dispute was solely with K-C and the picketing was orderly, peaceful and apparently with sincere effort to keep the ambulatory picketing as such within the confines of the criteria established by the Board in the Moore Dry Dock case. Other important conduct and circumstances did surround the simple acts of picketing which are important to the decision I finally make.

■ The Board by its attorney in his briefing and oral discussion again seems to urge that this type of ambulatory picketing in itself is a per se violation without more when there is a primary situs available for picketing. However, such contention has been rejected strongly by the Courts with the expression that no factors can be isolated in this fashion as a single determinant for solution. Le Bus v. Local 406 et al., D.C., 145 F.Supp. 316; Sales Drivers et al. v. N. L. R. B., 97 U.S.App.D.C. 173, 229 F.2d 514; Truck Drivers and Helpers Local Union No. 728, etc., v. N. L. R. B., 101 U.S.App. D.C. 420, 249 F.2d 512; N. L. R. B. v. General Drivers, Warehousemen & Helpers Local 968, 5 Cir., 225 F.2d 205. In a recent comprehensive and detailed discussion of National Labor Relations Board, Circuit Court and Supreme Court decisions, Chief Judge Prettyman again emphasizes that the test must be the objective of the secondary activity as gleaned from the overall consideration of circumstances under which it is done. Seafarers' Intern. Union of North America, etc. v. N. L. R. B., 105 U.S.App.D.C. 211, 265 F.2d 585. The objective was the dominant factor motivating the Congress in enacting the secondary boycott provision and not the quality of the means to accomplish that objective. International Brotherhood of Electrical Workers, et al. v. N. L. R. B., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299. Ambulatory picketing as such is not proscribed as in itself an illegal secondary activity (N. L. R. B. v. Service Trade Chauffeurs, Salesmen & Helpers, Local 145 et al., 2 Cir., 191 F.2d 65), but in respect to it the Circuit Courts of Appeals seem to be impressed by the standards of Moore Dry Dock. N. L. R. B. v. Associated Musicians et al., 2 Cir., 226 F.2d 900, 905. As Judge Wyzanski points out in Alpert v. United Steelworkers of America, etc., D.C.Mass., Civ. No. 56–403, 141 F.Supp. 447, at page 452, there is a different trend by the Board in

regard to such ambulatory picketing away from the landmark rulings in Schultz v. Refrigerated Services, Inc., 87 N.L.R.B. 502, and Moore Dry Dock Company, to more narrow applications of such rulings in Washington Coca-Cola Bottling Works, Inc., 107 **N.L.R.B.** 299 and in Thurston Motor Lines, Inc., 110 N.L.R.B. No. 122. See also Clark Bros. Transfer Co., 116 N.L.R.B. 1891, 38 L.R.R.M. 2630; District Distributors, Inc., 119 N.L.R.B. 845; Booher Lumber Co., Inc., 117 N.L.R.B. 1739; Capital Paper Co. & Consolidated Sales, Inc., 117 N.L.R.B. 635.

However, under the limited appraisal I must make as to "reasonable cause to believe" I am convinced there is enough in the record made before me, considering the combination of all surrounding circumstances to enjoin temporarily pending decision by the Board. In the weighing of all the facts, it seems reasonably clear that the objective of the secondary activity was to induce and encourage a concerted refusal by employees of Central, Troy Warehouse and Wilson not to handle K-C loads, with one object only,—to require their respective employers to cease doing business with K-C. There are many supporting elements in the record for such conclusion.

The activity and presence of Business Agent Smith, of course, an important and dominant figure in the local union, around the loading platforms of Wilson and Troy Warehouse when K-C trucks were not present is a strong factor that indicates true motive on the part of the Union. His discussions with the several shop stewards, with the direct request to one of the stewards of his own Union to let him know when K-C trucks came to their loading platforms, are most significant in the search for objective. These messages were passed on to other employees and were bound to have great impact. The professed friend of the owners of K-C, Bonomo, a Union representative, also hovered around certain platforms when Smith ostensibly was only interested in speaking directly to employers. The presence of the striking drivers at the Troy warehouse in their cars without picket signs where they could be seen by the employees of that concern who knew them well must be considered. The written statements of Checker Cafaro of Central Warehouse (Pet. Ex. 1) and Goyer, as checker of Troy Warehouse (Pet. Ex. 2), are the strongest type of proof that the combination of activity, presence and instructions had gotten through to the employees not to load or give anything to K-C trucks. To me these related circumstances evidence only one objective, to induce and encourage concerted refusal of these employees to handle K-C goods and influence by this improper and indirect pressure the neutral employers to cease doing business with K-C. In fact, Central and Troy Warehouses did cease such business.

These additives, and the presence of extra-special guests at the ambulatory picketing sites at times when the K-C trucks were there and other times not, exceeded in my judgment the standards of the Moore Dry Dock Company case, and the combination of methods infected the ambulatory picketing with illegality.

It is also noteworthy that at most times when the ambulatory picketing was done at the premises of the neutral employers the K-C trucks were operated by management. Chief Judge Clark in N. L. R. B. v. Associated Musicians et al., 2 Cir., 226 F.2d 900, 906, attaches importance to such fact when it was not necessary to so picket the common premises in order to reach the employees of the primary employer. In the same authority (at page 905) he also answers a contention of the respondents as to absence of actual strike with the statement that no employee of the secondary employer need actually engage in a strike in order that a violation of the Act be found. In my judgment, there is sufficient to enjoin temporarily pending final determination by the National Labor Relations Board.

The government has submitted proposed findings of fact and conclusions of law. They are fairly stated and I shall

adopt and sign such findings as supplemental to the ones made herein, except that I make certain additions and deletions to conform accurately with the evidence presented at the hearing before me. The order of injunction, although broad, seems justifiable from past conduct proven as a necessary and reasonable interpretation of the future. A conformed copy of such findings of fact, conclusions of law and order granting temporary injunction will be mailed herewith to the attorney for the respondents. The originals will be filed with the Clerk of the Court at Utica, New York.