NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL UNION OF UNITED BREWERY, FLOUR, CEREAL, SOFT DRINK AND DISTILLERY WORKERS OF AMERICA, AFL–CIO, and Local No. 366, International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, AFL–CIO, Respondents.

No. 6081.

United States Court of Appeals Tenth Circuit.

Nov. 19, 1959.

Duane B. Beeson, Washington, D. C. (Jerome D. Fenton, Thomas J. McDermott, Marcel Mallet-Prevost and James C. Paras, Washington, D. C., were with him on the brief), for petitioner.

James C. Paradise, Cincinnati, Ohio (Philip Hornbein, Jr., Denver, Colo., was with him on the brief), for respondents.

Before MURRAH, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

MURRAH, Chief Judge.

In this action under Section 10(e) of the National Labor Relations Act as amended 29 U.S.C.A. § 160(e), the Labor Board seeks enforcement of an order directing respondent union to cease and desist from an alleged secondary boycott of Adolph Coors brewery, with which it was engaged in a labor dispute. The order is based upon Board findings that the union had engaged in an unfair labor practice condemned under Section 8(b) (4) (A) of the Act as amended 29 U.S. C.A. § 158(b) (4) (A), by inducing and encouraging the employees of certain retail establishments "to refuse to perform their normal job functions of accepting deliveries of Coors products," with the object of compelling "the retail store owner to cease handling Coors beer."

Section 8(b) (4) (A) provides, in presently material part, "It shall be an unfair labor practice for a labor organization or its agents * * * to induce or encourage the employees of any employer to engage in * * * a concerted refusal in the course of their employment to use * * * commodities or to perform any services, where an object thereof is: (A) forcing or requiring any employer * * * to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer * * *." Consistent with its dual purposes of preserving to unions their right to strike and of shielding unoffending employers from employee pressures in disputes not their own, see N.L.R.B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 692, 71 S.Ct. 943, 95 L.Ed. 1284, the Act does not proscribe peaceful picketing or related agitation at or near the premises of neutral employers, so long as it is neither directed toward, nor has the effect of induc-

ing the neutral employees to a concerted refusal to perform some of their duties. See § 13 of the National Labor Relations Act as amended 29 U.S.C.A. § 213; N.L.R.B. v. International Rice Milling Co., 341 U.S. 665, 672-673, 71 S.Ct. 961, 95 L.Ed. 1277; N.L.R.B. v. Service Trade Chauffeurs, etc., 2 Cir., 191 F.2d 65. Specifically, the union may rightfully picket Coors trucks wherever they are found in normal business, Sales Drivers, etc. v. N.L.R.B., 97 U.S.App.D.C. 173, 229 F.2d 514; or seek a consumer boycott of Coors beer at retail establishments, N.L.R.B. v. Service Trade Chauffeurs, etc., supra; or endeavor to influence the retailer, independent of his employees, not to handle Coors, Rabouin v. N.L.R.B., 2 Cir., 195 F.2d 906; or even encourage an isolated employee of a retailer not to handle Coors, provided it does not tend to incite prohibited concerted action. N.L.R.B. v. International Rice Milling Co., supra. And the union simply contends that their activities fall within these latter areas of permissible conduct. The question is presented on the following undisputed facts.

Coors customarily distributes its product to its Denver retailers in its own trucks from a Denver warehouse. When, during the collective bargaining for a new contract in April, 1957, the warehouse and delivery personnel struck, Coors leased its Denver trucks to certain of its independent distributors and thus continued to operate the warehouse and service its Denver accounts. In May, 1957, the strikers began following the delivery trucks on their routes, and during the time of each delivery engaged in picketing and distributing pamphlets in and about the retail establishment, and on certain occasions conversed with retail establishment personnel, discouraging acceptance of the delivery. The pickets generally patrolled near the truck, the delivery entrance, and the main entrance. Their signs carried the legend, "To the beer drinking public—Coors Brewery— ON STRIKE—don't buy Coors beer," followed by the name of the union local. Only the words "on strike" were larger than the others, and all of the message was easily readable. The strikers also frequently told the retailer that they were not picketing him, but only the truck. The pamphlets carried a bold-lettered exhortation, "Don't buy Coors beer," and generally appealed for support of the strikers' cause. In several instances, oral pleas not to buy Coors and pamphlet distributions were made to employees as well as customers of the retailer. As for the entreaties to employees not to accept the delivery, three specific instances are described: At a drug store, the pharmacist was at first persuaded not to accept delivery, but after phoning the store owner, did accept; at another drug store, the clerk at the liquor department was similarly encountered but he referred the strikers to the store manager; and in a market, the entreaty was made to a person behind the counter. No refusals to accept any delivery are shown.

To be sure, we recognize that picketing frequently involves potent implications absent in other modes of communication. See N.L.R.B. v. Dallas General Drivers, etc., 5 Cir., 264 F.2d 642; and cf. N.L.R.B. v. Local 50, Bakery and Confectionery Workers, 2 Cir., 245 F.2d 542. But here, we find in the evidence neither any attempt to influence retailers' employees not to cross picket lines, which were of only momentary duration anyway, nor any work stoppage among these employees from which such an influence could be inferred. See N.L.R.B. v. Business Machine, etc., 2 Cir., 228 F.2d 553, 559; N.L.R.B. v. Associated Musicians, etc., 2 Cir., 226 F.2d 900, 905; N.L.R.B. v. Laundry, Linen Supply & Dry Cleaning Local No. 928, 9 Cir., 262 F.2d 617. Indeed, we find in the union's picketing, pamphlet distribution, and exhortation of beer consumers, nothing more than legitimate embarrassment of the strike-breaking Coors driver and the advocacy of a consumer boycott of Coors beer.

And we fail to see where the encouragement of retail personnel to refuse to accept deliveries, even if directed at "employees" within the meaning of the Act, was intended or had the effect of

**820**

invoking "concerted" action any more than in N.L.R.B. v. International Rice Milling Co., supra. In that case, the Court held that isolated efforts directed at "secondary" employees did not constitute an unfair labor practice, recognizing that only efforts to promote concerted action by the secondary employees are condemned. Cf. Amalgamated Meat Cutters, etc. v. N.L.R.B., 99 U.S.App.D.C. 24, 237 F.2d 20. The only distinction between the Rice Milling case and ours is the locus of the union effort, which in both cases was a place where the primary employer was engaged in its normal business, and that is a proper locus for such union agitation. See N.L.R.B. v. Service Trade Chauffeurs, etc., supra; In re Sailors' Union of the Pacific, etc., 92 N.L.R.B. 547; Sales Drivers, etc. v. N.L.R.B., 97 U.S.App.D.C. 173, 229 F.2d 514; N.L.R.B. v. General Drivers, etc., 5 Cir., 225 F.2d 205; cf. N.L.R.B. v. Denver Building & Construction Trades Council, 10 Cir., 193 F.2d 421.

■ We of course recognize the primary function of the Board to find facts, draw inferences, and construe the Act to effectuate its purposes. But we nevertheless have the "ultimate responsibility for the rationality of the Board's decision," and we will not enforce it if upon the whole record we are convinced that it is not justified in fact and law. See N.L.R.B. v. Tri-State Casualty Ins. Co., 10 Cir., 188 F.2d 50, 53; N.L.R.B. v. Machine Products Co., 10 Cir., 198 F.2d 313; Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

■ Upon consideration of this record, we are convinced that the undisputed facts do not justify the inference that the unions encouraged or induced employees of any retailer to engage in a concerted refusal to perform any service with the object of forcing any such retailer-employer to cease selling, handling or dealing in Coors products. The petition for enforcement must therefore be denied.