**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 859, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 24098.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 21, 1970.

Decided June 7, 1971.

Mr. Robert J. Connerton, Washington, D. C., with whom Messrs. Arthur M. Schiller, Jules Bernstein, Washington, D. C., and Marvin Menaker, Dallas, Tex., were on the brief, for petitioner.

Mr. Joseph E. Mayer, Atty., National Labor Relations Board, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Allison W. Brown, Jr., Atty., National Labor Relations Board, were on the brief, for respondent.

Before BAZELON, Chief Judge, and McGOWAN, Circuit Judge, and SMITH,[*] Chief Judge, U. S. District Court for the District of Montana.

SMITH, Chief District Judge:

The petition to review, and the cross-application to enforce an order of the National Labor Relations Board, presents secondary activity and "struck-work ally" problems under § 8(b) (4) (i) and (ii) (B) of the National Labor Relations Act.

McDonald Bros. Cast Stone Co. (McDonald) had as customers for its stone, Thomas B. Byrne, Inc. (Byrne), Citadel Construction Company, Inc. (Citadel) and Dee Brown Masonry, Inc. (Brown), all of whom were building contractors actively performing construction contracts. Laborers International Union of North America Local 859, AFL–CIO (Union), the exclusive collective bargaining representative of McDonald's employees, commenced an economic strike in support of its bargaining demands.

Traditionally McDonald sold its stone F.O.B. job site and delivered it in its own trucks driven by members of the Union. During the strike Byrne, Citadel and Brown made arrangements with independent truckers (hereafter Independents) to deliver the McDonald stone to their job sites and deducted the truck charges from the contract price of the stone. Thus McDonald continued to bear the cost of delivery.

When deliveries of McDonald stone were made by the independent truckers to Byrne in August, 1968, and Citadel in December, 1968, Union pickets appeared at the job sites carrying signs [1] directed to McDonald's employees and apparently to its customers. There were no McDonald employees at the job sites. When the pickets appeared some of the employees of both Byrne and Citadel quit work and did not return for some time. Charges were filed against the Union by Byrne and Citadel. In March, 1969, Brown, who was ready to place stone, was advised by the Union agents that the Union was "going to picket the stone whenever and wherever the opportunity presented itself" and was going to picket "the stone if it arrived at the job." A picket equipped with a sign [2] stationed himself in a motor vehicle across the street from the Brown job site. Brown filed charges with the Board.

The Union claimed that Byrne, Citadel and Brown were "allies" of McDonald and that its picketing was therefore primary and permitted. The Board rejected this contention and held that the con-

---

[*] Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

1. The signs carried at Byrne's job site read:
"Don't Buy Products
of
McDonald Stone Products
UNFAIR

To Laborer's Local Union #859
This Picketing is Directed Only
At Employees of McDonald
Stone Products.
Laborer's Local Union #859."
The sign used at Citadel was similar.

2. The sign was similar to the one previously described except that it was not addressed to McDonald customers.

tractors were neutral secondary employees and the picketing and threats of picketing did violate the Act.[3]

We reject the contention of the Union that Byrne, Citadel and Brown were "struck-work allies" of McDonald because they made the arrangements with the Independents to have the stone delivered. We agree with the Board's conclusion that Byrne, Citadel and Brown were neutral secondary employers. We hold that the Independents were "struck-work allies" of McDonald. We reject the Board's reasoning that the delivery of the stone was not "struck-work" because the arrangements for the delivery were not made by McDonald.

We hold that any employer whose employees are performing work which would normally be performed by striking employees is an ally of the struck employer and that the work being done is struck work and that it is not important how the ally gets that work. In Douds v. Metropolitan Federation of Architects, etc., 75 F.Supp. 672 (S.D.N.Y.1948), the court laid heavy emphasis on the economic effect of the work performed by the ally's employees. Thus the court said:

> The evidence is abundant that Project's employees did work, which, but for the strike of Ebasco's employees, would have been done by Ebasco. The economic effect upon Ebasco's employees was precisely that which would flow from Ebasco's hiring strikebreakers to work on its own premises. The conduct of the union in inducing Project's employees to strike is not different in kind from its conduct in inducing Ebasco's employees to strike. If the latter is not amenable to judicial restraint, neither is the former. In encouraging a strike at Project the union was not extending its activity to a front remote from the immediate dispute but to one intimately and indeed inextricably united to it.

In the Royal Typewriter case (NLRB v. Business Machines, etc., 228 F.2d 553 (2 Cir. 1955)) the court held the independent repairmen who performed the struck work to be allies. In that case Royal told the customers to whom it was contractually obligated to render repair service to call an independent repair company and to then bill Royal for the services. In only one case did Royal make the arrangement directly. The court noted these facts and then said: "It is obvious, however, that what the independents did would inevitably tend to break the strike."

In terms of the realities of the labor dispute it makes no difference who makes the telephone call which brings into the dispute those who do the struck work. Those who do the work which the striking employees would otherwise do are the ones who alter the pressures involved in the struggle—it is they who are involved in the dispute and it is their employer who is the "struck-work ally".

The question then arises, did the customers become allies by calling on the Independents to deliver the stone? We think not. The struck work was the work done on the stone from the beginning of its processing through its delivery. Any customer could order the stone, before or after the strike, and by reason of the protection afforded by § 8(b) (4) of the Act be free from any pressure directed to his own employees to cause them to cease handling the stone. National Woodwork Mfg. Assn. v. NLRB, 386 U.S. 612, 635, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967); NLRB v. Dallas General Drivers, etc., Local No. 745, 264 F.2d 642 (5 Cir. 1959); NLRB v. Wine, Liquor & Dist. Wkrs., 178 F.2d 584 (2 Cir. 1949). By buying the stone a customer does not become an ally of the supplier nor does he forfeit his § 8(b) (4) rights. It follows that if a customer does not become an ally of a struck employer by ordering the product of the whole of the struck work (in this

---

3. 29 U.S.C. § 158(b) (4) (i) (B) and (b) (4) (ii) (B).

case the delivered stone) he does not become an ally by ordering the product of some part of the struck work (in this case the delivery).

█ The Union had a right to picket the independent truckers as allies of McDonald and since such picketing was primary had a right to engage in the picketing wherever the allies might be found, including the customers' job sites. NLRB v. Service Trade Chauffeurs, etc., 191 F.2d 65 (2 Cir. 1951). It did not however have a right to do or threaten acts calculated to cause the Byrne, Citadel or Brown employees to cease handling the McDonald stone.

Guide lines established by the Board where a primary employer has a roving situs and the picketing of him affects a secondary employer were approved by the Court of Appeals for the Second Circuit in *Service Trade Chauffeurs, supra*:

> * * * picketing of the premises of a secondary employer is primary if it meets the following conditions: (a) The picketing is strictly limited to times when the situs of dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at the situs; (c) the picketing is limited to places reasonably close to the location of the situs; and (d) the picketing discloses clearly that the dispute is with the primary employer.

We, too, approve these guide lines and apply them to this case where the ally of the primary employer is the object of the picketing.

█ We think that with respect to Byrne and Brown the Union action went beyond these guide lines. In the case of Byrne, the threat as shown by the record and found by the examiner, was to picket Byrne for using McDonald stone. As previously noted, the threats to Brown were that the Union would "picket the stone wherever and whenever the opportunity presented itself." The Union had no right to picket the stone except while it was in the hands of the "struck work ally." The threatened

picketing was broader than the right to picket and the threats were improper. In the case of Byrne, the picketing continued for some time after the trucks left the job site.

With respect to Citadel, however, the picketing was exactly coterminous with the presence of the ally trucks. Neither the examiner nor the board found that any threats had been made, and the only one revealed by the record is "He told me I was not going to get any more McDonald stone if I did not get a picket." This threat did not express an intention to picket beyond permissible limits since if the McDonald stone arrived there was a right to picket so long as the delivery truck was at the job site. We think that in the case of Citadel the Union action did not violate the guide lines here stated.

For these reasons the order of the Board is enforced insofar as it relates to Brown and Byrne, and the enforcement of the order is denied insofar as it relates to Citadel.

So ordered.