UNITED BRICK & CLAY WORKERS OF AMERICA et al. v. DEENA ART-WARE, Inc.

No. 11403.

United States Court of Appeals Sixth Circuit.

July 30, 1952.

638

Herbert S. Thatcher, J. Albert Woll, Washington, D. C. (Joseph S. Freeland, Paducah, Ky., John Y. Brown, Lexington, Ky., Nathan Duff, Perth Amboy, N. J., Woll, Glenn & Thatcher, Washington, D. C., on the brief), for appellants.

James G. Wheeler, Paducah, Ky. (James G. Wheeler, Thomas J. Marshall, Jr., Paducah, Ky., on the brief), for appellee.

Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Appellee brought this action in the district court for damages, alleging in substance a secondary boycott by the Appellants in violation of the provisions of § 303 of the Labor Management Relations Act of 1947, § 187, Title 29, U.S.C.A. A jury returned a verdict in favor of the Appellee in the sum of $29,985.85, upon which judgment was entered, followed by this appeal.

The Appellee, Deena Artware, Inc., hereinafter referred to as Deena, is engaged in the business of manufacturing and selling lamp bases at Paducah, Kentucky. The Appellant, The United Brick and Clay Workers of America, hereinafter referred to as the Union, is a labor organization and a member of the American Federation of Labor, its co-defendant herein. Employees of the Appellee were members of the Union. This case is a companion case to N. L. R. B. v. Deena Artware, Inc., No. 11566 in this Court, 198 F.2d 645 in which an opin-

ion is being handed down at the same time. Both actions arise out of a strike put into effect by the Union against Deena on May 26, 1948 following a failure to reach a collective bargaining agreement after a number of conferences between the parties. The issues presented by the two cases are not the same, although one of the issues involved collaterally in N. L. R. B. v. Deena Artware, Inc., and discussed briefly therein, is the main issue involved in this appeal.

Section 303 of the Labor Management Relations Act, § 187, Title 29 U.S.C.A. involved herein, provides in part as follows:

"(a) It shall be unlawful * * * for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to * * * work on any goods * * * * or to perform any services, where an object thereof is—

"(1) forcing or requiring any employer * * * to cease using * * * or otherwise dealing in the products of any other producer * * * or to cease doing business with any other person;

"(2) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees * * *;

"(3) forcing or requiring any employer to recognize or bargain with a particular labor organization * * *;

"(4) forcing or requiring any employer to assign particular work to employees in a particular labor organization * * *.

"(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

Although the phrase "secondary boycott" is not used in the body of the statute, the section deals with the exercise by a labor organization of secondary pressure in a labor dispute, and is generally referred to as the section dealing with secondary boycott. It will also be noticed that a counterpart of § 303(a) is contained in § 8(b) (4) of the National Labor Relations Act as amended by § 101 of the Labor Management Relations Act, 29 U.S.C.A. § 158(b) (4), describing such procedure as an unfair labor practice on the part of a labor organization. This counterpart is the section of the Act which was under consideration by us in the companion case of N. L. R. B. v. Deena Artware, Incorporated, referred to above. It is also the section of the Act involved in the following recent cases from the United States Supreme Court, which will be referred to hereinafter, and which have a very material bearing on our present problem although not involving the identical section of the statute which is involved herein. N. L. R. B. v. International Rice Milling Co., 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1284; N. L. R. B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; International Brotherhood of Electrical Workers v. N. L. R. B., 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; Local 74, United Brotherhood of Carpenters v. N. L. R. B., 341 U.S. 707, 71 S.Ct. 966, 95 L.Ed. 1309.

The complaint alleges that on December 8, 1947, Deena entered into a contract with Vandevelde and Augustus, independent general contractors, who agreed to erect for Deena a manufacturing and warehouse building on land owned by Deena in Paducah; that prior to May 26, 1948, the general contractors had begun the construction of said building and had caused large quantities of material and equipment to be transported into Kentucky from other States; that the construction work had progressed to the point of completing the foundation of the building and that the first carload of structural steel to be used

in the construction of the building was placed on tracks at the building site on June 1, 1948 and that another carload arrived within a few days; that when an effort was made shortly thereafter by sub-contractors employed by the general contractors to unload the structural steel, the Appellants caused a picket line to be placed and maintained around the construction work; that the general contractors had no labor dispute with their employees and none of the contractors under them had any labor dispute with their employees; that thereafter whenever the general contractors or the sub-contractors attempted to work on the construction of the said building the Appellants picketed the construction job and thereby caused the employees of the general contractors and the sub-contractors to refuse to work on the construction job; that in causing said job to be picketed the Appellants induced and encouraged employees of the general contractors and the sub-contractors to engage in concerted refusal to perform services for the general contractors and the sub-contractors, the object thereof being to force the general contractors to cease doing business with Deena, and to force Deena to bargain with the Union which had not been certified as the representative of the employees of Deena; that as the direct and proximate result of such action the employees of the general contractors and the sub-contractors were induced to engage in concerted refusals to work on the construction of the building, and as the direct and proximate result of such refusal Deena was compelled to discontinue the construction of the said building. The complaint as amended sought damages in the sum of $243,605.52.

The Appellants made a general denial of the material allegations of the complaint as amended and also pleaded as a defense thereto (1) that the complaint failed to state a claim upon which relief could be granted; (2) that the District Court lacked jurisdiction, since diversity of citizenship as required for actions under § 303 of the Labor Management Relations Act was not shown, and (3) that § 303 of the Labor Management Relations Act, if construed as

contended for by Deena, was unconstitutional as being violative of the First and Fifth Amendments of the Constitution of the United States. The District Judge ruled that jurisdiction existed, that § 303 of the Labor Management Relations Act was not unconstitutional, and, conditional upon the existence of certain facts, conferred a right of action for damages upon Deena, and that the evidence produced was sufficient to submit such factional issues to the jury. Appellants renew their contentions upon this appeal.

■ Appellants' contention that diversity of citizenship is necessary to confer jurisdiction upon the district court is based upon the fact that § 301(a) of the Labor Management Relations Act, § 185(a), Title 29, U.S.C.A., dealing with suits for violation of contracts between an employer and a labor organization, confers jurisdiction upon the district court "without respect to the amount in controversy or without regard to the citizenship of the parties", while § 187(b), Title 29, U.S.C.A., dealing with the so-called secondary boycott provisions, provides that the action may be brought in the district court "without respect to the amount in controversy," thus requiring by implication the existence of diversity of citizenship. Such a construction was given to the Act in the case of Lach v. Hoisting & Portable, Power & Dredge Engineers Local, D.C.Mass., 86 F. Supp. 463. However, we are of the opinion that the better rule is as stated in Schatte v. International Alliance, Etc., 9 Cir., 182 F.2d 158, 165, where it was pointed out that § 303 of the Act creates new substantive rights and liabilities, together with an appropriate remedy for their enforcement, and that an action under it clearly arises under a law of the United States within the meaning of § 1331, Title 28 U.S.Code, and under an Act of Congress regulating commerce within the meaning of § 1337, Title 28 U.S. Code, both of which sections grant jurisdiction to the district courts without requiring diversity of citizenship. See also Banner Mfg. Co. v. United Furniture Workers, D.C.S.D.N.Y., 90 F.Supp. 723, 724; L. Fatato, Inc., v. Beer Drivers Local Union, D.C.E.D.N.Y.,

93 F.Supp. 481, 482; Hamilton Foundry & Machine Co. v. International Molders, et al., 6 Cir. 193 F.2d 209, 214.

We are of the opinion that the District Judge also correctly ruled that § 303 of the Act was not unconstitutional under the First and Fifth Amendments of the Constitution of the United States. Appellants rely chiefly upon Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L. Ed. 855; Bakery and Pastry Drivers v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178; Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430. We think the question is controlled by the more recent opinion of the Supreme Court in International Brotherhood of Electrical Workers v. N. L. R. B., 341 U.S. 694, 705, 71 S.Ct. 954, 95 L.Ed. 1299; See also Hughes v. Superior Court, 339 U.S. 460; International Brotherhood of Teamsters v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995; Building Service Emp. Intern. Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045.

In determining whether § 303 of the Act conferred a right of action upon the appellee Deena, under the facts of this case, it is important to have in mind the geographical location of Appellee's existing plant and warehouse together with the adjoining area upon which the general contractors were to construct another building for Appellee. Material aid in this respect is furnished by the map contained in Appellant's brief. It shows the following physical features: Deena's existing plant is located on the southwest corner of a piece of property owned by it, approximately one square block in area, bordered on the south by Ohio Street, on the east by Second Street, on the north by Jackson Street, and on the west by Third Street. It extends northwardly about one-third of the distance to Jackson Street, and eastwardly to a spur track of a railroad which runs through the center of the property from north to south. Deena's existing warehouse is on the southeast corner of the property, extending westwardly to the spur track, which separates the plant from the warehouse. The warehouse extends northwardly about one-sixth of the distance to Jackson Street. The area of new construction, upon which the additional warehouse and manufacturing plant were to be constructed, was on the east side of the spur track and immediately north of and adjacent to the existing Deena warehouse, running all the way north to Jackson Street. However, there was no door or opening on the north side of the existing warehouse. There was a door opening from the west side of the existing warehouse on to the spur track of the railroad and also a door on the east side of the existing Deena plant opening on to the spur track of the railroad. The other entrances to the existing plant and warehouse were on Ohio Street. The construction work on the new plant had progressed to the point where the foundation had been laid and the contractors had prepared for the erection of the structural steel. A picket line, established by the Appellants after the start of the strike, started at the front entrance of the existing Deena plant at the corner of Third and Ohio Streets, extended east on Ohio Street to Second Street, north on Second to Jackson Street, west on Jackson Street to the spur track of the railroad, and south along the spur track to Ohio Street, thus covering not only the entrances to the existing plant and warehouse on Ohio Street but also including the entire area of new construction north of the existing warehouse.

Appellants claim that it was necessary to picket the area of new construction in order to prevent employees from crossing that area and entering the existing plant or warehouse through the doors opening on the spur track of the railroad and that the picketing so described was primary picketing, generally recognized as legal in labor disputes between employer and employee, regardless of the resulting damage to the employer. Appellee contends that it was not necessary to extend the picket line completely around the area of new construction; that complete picket line coverage of the doors of the existing plant and warehouse opening on to the spur track of the railroad could have been accomplished by merely extending the picket line northwardly on the spur

track from Ohio Street to the north wall of the existing Deena warehouse and returning then to Ohio Street; that the picket line was extended completely around the area of new construction for the purpose of preventing the employees of the general contractors from entering that area, thus forcing the general contractors to cease doing business with Deena because of their inability to proceed with their construction work; that the picketing so described extended beyond the limits of primary picketing and constituted a secondary boycott through pressure on the general contractors, and was in violation of § 303(a) (1) of the Labor Management Relations Act hereinabove set out.

It is well established by now that the right to strike under the National Labor Relations Act, § 163, Title 29 U.S.C.A., includes peaceful picketing by the striking employees of the employer's place of business, regardless of the damage to the employer's business resulting therefrom. N. L. R. B. v. Rice Milling Co., 341 U. S. 665, 671, 71 S.Ct. 961, 95 L.Ed. 1284; N. L. R. B. v. Service Trade Chauffeurs, 2 Cir., 191 F.2d 65, 67. Such activity is generally referred to as "primary" picketing. But the extension of such picketing for the purpose of exerting pressure on a neutral employer, generally referred to as "secondary" picketing or boycott, was, under certain conditions, made unlawful by § 303(a) of the Labor-Management Relations Act of 1947. As pointed out in N. L. R. B. v. Service Trade Chauffeurs, supra, the difficulty lies in determining whether certain activity on the part of striking employees constitutes "primary" or "secondary" picketing. In the present case there was also the issue whether the picketing of the area of construction was by the Appellants or by the Teamsters Union, a separate labor organization with whom the general contractors had a labor dispute. If the picketing around the area of construction in the present case was by the Appellants and was for the purpose of forcing the general contractors to cease doing business with Deena, and accomplished that result, it was unlawful under § 303(a) (1) of the Act. If it was not by the Appellants or was not for

that purpose, but was in substance merely a picketing of the place of business of the primary employer, it was not unlawful. We agree with the District Judge that the evidence presented questions of fact for the jury. The physical facts, as above described, show clearly that it was not necessary to extend the picket line around the area of construction in order to cover all the entrances to the existing plant and warehouse. The evidence also showed that the picketing of the area of construction was not continuous, but was in effect only when attempts were made to unload steel or to perform work on the area. In our opinion, the evidence was sufficient to take the case to the jury on the issues of whether the picketing on the part of the Appellants was against Deena or against the general contractors and the purpose thereof. The charge of the District Judge properly presented these factual issues to the jury for its decision. The jury found for the Appellee.

██ We recognize that this finding is contrary to the finding in the companion case of N. L. R. B. v. Deena Artware, Inc., No. 11156, supra, in which the Trial Examiner found that the picketing of the area of construction which caused the cessation of work by the general contractors was on the part of the Teamster's Union and not by the Appellants, which finding we have upheld and on which we have based a ruling in that case. Under our existing system of courts, juries, administrative agencies, and appellate review, such findings, even though inconsistent, are not invalid, and one does not destroy the other. The two proceedings, even though arising out of the same labor dispute, were heard by separate fact finding agencies. The witnesses in the two proceedings were not the same. The cross-examination of some witnesses who testified in both proceedings was not by the same attorneys. Necessarily, the evidence produced in the different proceedings by such testimony was not identical. Each fact finding agency was entitled to make its own decision upon the evidence before it. Though this Court on review recognizes the inconsistency, and may not be in accord with one of the two

rulings if it was making the ruling as a matter of original jurisdiction, it does not have the right to set aside such ruling, if, in case of the jury verdict, it is supported by substantial evidence, or, in the case of the Labor Board proceeding, it is supported by substantial evidence on the record considered as a whole. In our opinion, the respective findings are so supported in each of the two proceedings.

■ Appellants rely upon a number of decisions as holding that where picketing is confined to the immediate vicinity of the employer's premises it constitutes permissive primary action. Oil Workers International Union, 84 N. L. R. B., 315; Ryan Construction Co., 85 N. L. R. B. 417; Moore Dry Dock Co., 92 N. L. R. B. No. 93; N. L. R. B. v. Service Trade Chauffeurs, supra. While that is one element to be considered in determining whether picketing is primary or secondary, it is not controlling. In N. L. R. B. v. Denver Building and Construction Trades Council, supra, and International Brotherhood of Electrical Workers v. N. L. R. B., supra, the Supreme Court held the picketing unlawful even though it was confined to the immediate premises of the employer.

Nor does the ruling in N. L. R. B. v. Rice Milling Co. [341 U.S. 665, 671, 71 S.Ct. 964], supra, sustain Appellants' contention. In that case the Supreme Court expressly stated, "The limitation of the complaint to an incident in the geographically restricted area near the mill is significant, although not necessarily conclusive." The ruling in that case in favor of the Union was based on the fact that the evidence failed to show that the Union sought *concerted* conduct on the part of the employees of the other employer.

Appellants also rely upon the ruling of the Kentucky Court of Appeals in Boyd v. Deena Artware, 239 S.W.2d 86, 90, which case involved this identical labor dispute. The Court dissolved an injunction granted by the lower court which prohibited picketing of the area under construction. In doing so, the Court said, "The area which was picketed was contiguous to the warehouse, which unquestionably could be picketed,

and it might reasonably be said to be an integral part of one industrial facility in the process of physical expansion, since it is separated from the remainder by a mere artificial line." However, the ruling was not based on the fact that the picketing was primary rather than secondary. The Court held as one ground for its ruling that the picketing, as so extended, was not illegal under the law of Kentucky, citing Blanford v. Press Publishing Co., 286 Ky. 657, 151 S.W.2d 440, and making reference in connection therewith to Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 and International Brotherhood of Teamsters, etc. v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995. The issue of secondary pressure, prohibited by the Labor-Management Relations Act of 1947, was not involved in the case. As shown by the cases of N. L. R. B. v. Denver Building and Construction Trades Council, supra, and International Brotherhood of Electrical Workers v. N. L. R. B., supra, such an issue presents an entirely different question. The Kentucky Court also held, as another ground for its ruling, that the injunction against picketing the area under construction was a denial of the constitutional guaranty of free speech. But this ruling was also without reference to the prohibitory provisions of the Labor-Management Relations Act of 1947 and prior to the ruling of the Supreme Court in International Brotherhood of Electrical Workers v. N. L. R. B., supra, which held that the prohibition of secondary pressure contained in the Act was not an unconstitutional abridgement of free speech. Accordingly, the case has little, if any, bearing upon the issue herein involved.

■ Appellants also contend that § 303 (b) of the Act, § 187(b), Title 29 U.S.C. does not confer a right of action upon the Appellee, the primary employer in the labor dispute herein involved. It reads "Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor * * *." They argue that it was the purpose of the Act to confer a right of action upon the neutral employer who,

through no fault of his own and without being himself involved in any labor dispute, is damaged by the secondary pressure exerted against him by a union involved in a labor dispute with another employer. We are urged to disregard the literal meaning of the word "whoever," and give to it a restricted meaning which would be consistent with the purpose of the Act and effectuate the will of Congress. United States v. American Trucking Associations, 310 U. S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345. There is some legislative history of the Act indicating a desire to protect an innocent third-party employer, but we do not find evidence of an intent to restrict the protection against a secondary boycott to such a person. The secondary boycott was not illegal under the National Labor Relations Act as originally enacted. N. L. R. B. v. Peter Cailler Kohler Swiss Chocolate Co., 2 Cir., 130 F.2d 503, 506. See American Federation of Labor v. Swing, supra; Bakery and Pastry Drivers v. Wohl, supra; Blandford v. Press Publishing Co., 286 Ky. 657, 151 S.W.2d 440. But Congress made it illegal by the enactment of the Labor-Management Relations Act of 1947. In doing so it used the broad and inclusive language of "Whoever shall be injured." The legislative history shows that Congress was aware of the broad coverage provided by this phrase. 93 Congressional Record, May 9, 1947, 4843–46, 4858, 4872–73. If it had intended to limit the right of action to innocent third-party employers, it could easily have done so. If Congress considered the use of the secondary boycott in a labor dispute as unfair labor practice and illegal, as it did by the enactment of the Labor-Management Relations Act of 1947, it was entirely consistent with such decision to give a right of action to anyone who was injured in his business by a violation of the law thereafter. See Schatte v. International Alliance, etc., D.C.S.D.Cal., 84 F.Supp. 669, 673; L. Fatato, Inc., v. Beer Drivers Local, supra. Such a construction was given to analogous provisions of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7. Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Roseland v. Phister Mfg. Co., 7 Cir., 125

F.2d 417, 139 A.L.R. 1013; Kentucky-Tennessee L. & P. Co. v. Nashville Coal Co., D.C.W.D.Ky., 37 F.Supp. 728, 735. We are of the opinion that in the present case the word "whoever" has a plain, unambiguous meaning which we are not authorized to disregard and as so construed it includes the Appellee. Crooks v. Harrelson, 282 U.S. 55, 59–60, 51 S.Ct. 49, 75 L.Ed. 156; Taft v. Commissioner, 304 U.S. 351, 358, 359, 58 S.Ct. 891, 82 L.Ed. 1393; Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 88–89, 56 S.Ct. 70, 80 L.Ed. 62; Wilbur v. United States, 284 U.S. 231, 237, 52 S.Ct. 113, 76 L.Ed. 261.

Appellants further contend that § 303(a) (2) of the Act, § 187(a) (2), Title 29 U.S.C.A. makes an exception to § 303(a) (1) of the Act, § 187(a) (1), Title 29, U.S.C. A. where a certified union applies secondary pressure to force recognition by the primary employer, and that their activities in this case fell within the exception. It is argued that the activity proscribed by § 303(a) (2) is also included in § 303(a) (1), and that § 303(a) (2) is meaningless and unnecessary unless construed as an exception. Although there is some basis for such a construction of the two sections, we do not think that such was the intent of Congress. Such a construction would make the first part of § 303(a) (2) a repetition of something already covered by § 303(a) (1) and therefore unnecessary. Such a result could have been more orderly and naturally obtained by combining the two sections into one section with the exception included. In enacting § 303(a) Congress subdivided it into four separate paragraphs, each apparently pertaining to a separate field of labor activity. There is no express provision making any one paragraph a modification or limitation of the provisions of another. In two of the paragraphs, 303(a) (2) and (a) (4) Congress expressly excluded certain activities from their general scope by the use of the word "unless." There is no such exception included in the wording of paragraph (a) (1). Implied exceptions to the express provisions of a statute are not favored. Maxwell v. Moore, 22 How. 185, 191, 16 L.Ed. 251; In re David Bell Scarves, D.C.,

52 F.2d 755, affirmed 2 Cir., 61 F.2d 771, Conrad, Rubin & Lesser v. Pender, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327; Wabash R. Co. v. United States, 8 Cir., 178 F. 5, 11. See Timken-Detroit Axle Co. v. N. L. R. B., 6 Cir., 197 F.2d 512. We are of the opinion that § 303(a) (2) pertains to a specific, restricted field of labor activity, not necessarily included in the provisions of § 303(a) (1), but in any event withdrawn from its coverage for the purpose of being treated as a separate and independent field of labor activity, and that it is not to be treated as nullifying the effect of other activities of labor organizations proscribed by § 303(a) (1). The action of the District Judge in submitting the case to the jury under the provisions of § 303(a) (1) only, without regard for the provisions of § 303(a) (2) was, in our opinion, correct.

The judgment is affirmed.