285 F.2d 325
 MILWAUKEE PLYWOOD COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 12991.
 United States Court of Appeals Seventh Circuit.
 December 20, 1960.
 
 Gerard D. Reilly and Lawrence T. Zimmerman, Washington, D. C.; Reilly & Wells, Washington, D. C., of counsel, for petitioner.
 Marcel Mallet-Prevost, Asst. Gen. Counsel, Duane B. Beeson, Attorney, National Labor Relations Board, Washington, D. C., Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Nancy M. Sherman, Attorney, National Labor Relations Board, Washington, D. C., for respondent.
 Before DUFFY, KNOCH and CASTLE, Circuit Judges.
 DUFFY, Circuit Judge.
 
 
 1
 This is a petition to review and set aside an order of the National Labor Relations Board (Board) which dismissed a complaint issued by the General Counsel pursuant to charges filed by petitioner (Company). The complaint was against General Local 200, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The decision and order of the Board are reported at 126 N.L.R.B. No. 80 (Feb. 15, 1960).
 
 
 2
 Petitioner, Milwaukee Plywood Company, has its plant at Milwaukee, Wisconsin. It is a wholly owned subsidiary of Aetna Plywood and Veneer Company of Chicago (Aetna Plywood). The employees at Aetna Plywood's warehouse in Chicago are represented by Local 743, Warehouse and Mail Order Employees Union, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.
 
 
 3
 Petitioner's warehouse and truck driving crews were represented jointly by Local 1582, United Brotherhood of Carpenters and Local 200, Teamsters. Petitioner, as a member of a multi-employers bargaining association, had negotiated through the Association a single joint contract with these Unions, Local 200 also represents truck drivers employed by other companies in the Milwaukee area.
 
 
 4
 On July 22, 1958, Local 743 commenced a strike against Aetna Plywood, and established a picket line at its plant in Chicago. On August 4, 1958, Local 743 began picketing petitioner's plant at Milwaukee. Some of the pickets carried or wore signs which read, "Notice to Public, Aetna Plywood Chicago, on Strike, Teamsters Local 743, Chicago, Illinois." For two days, on August 5 and 6, petitioner's warehousemen declined to cross the picket line at Milwaukee. However, the next day they returned to work.
 
 
 5
 Members of Local 200 appeared from time to time on the picket line to relieve regular pickets. Lemke, vice president of Local 200, participated at least on one day.
 
 
 6
 In making its charges, the Company also relied upon several other incidents. Members of Local 200 who were employees of carriers which customarily served the Company, were instructed by officers of Local 200 not to go through the picket line at the Milwaukee plant. Similar advice was given by telephone by officers of Local 200. These conversations were initiated by truck drivers who had been stopped at the picket line, and who had either called their union office by telephone or who had personally visited that office. There were also two occasions on which Local 200 officers or employees talked directly with the management of other trucking firms about respecting the picket line at Milwaukee.
 
 
 7
 The Board, in agreement with the trial examiner, concluded that although Local 200 had participated in the picketing at Milwaukee Plywood and had independently induced employees of trucking firms not to cross the picket line, the record did not establish a violation of Section 8(b) (4) (A) of the Act.
 
 
 8
 There is no dispute as to the facts. No witnesses were called in the hearing before the examiner. All parties stipulated to the receipt in evidence of the transcript of testimony taken in a hearing before the District Court for the Eastern District of Wisconsin in an action which the Company had brought against Local 743 and Local 200. This was a suit under Section 10(l) of the Act, seeking an injunction against both Locals pending determination by the Board of the instant proceeding. Local 743 was dismissed from the case. On January 27, 1959, District Judge Tehan handed down a decision refusing to issue an injunction. The District Court held the picketing and inducement directed against Milwaukee Plywood by Local 200 was tantamount to activities directed against a primary employer and was not a violation of Section 8(b) (4) (A) of the Act.
 
 
 9
 In view of the close inter-relationship between petitioner and Aetna Plywood, no point is made that the Board erred in considering them to be, in effect, one employer. We agree the Board was justified in taking that view. The instant case is no different in legal contemplation from the conventional situation where a union sets up a picket line at the premises of an employer with whom it has a dispute.
 
 
 10
 Congress has specifically guaranteed the right to strike. 29 U.S.C.A. § 163. "* * * Congress did not seek by § 8(b) (4), to interfere with the ordinary strike * * *." N. L. R. B. v. International Rice Milling Co., 341 U.S. 665, 672, 71 S.Ct. 961, 965, 95 L.Ed. 1277. The courts have consistently interpreted Section 8(b) (4) (A) not literally, but "* * * in conformity with the dual congressional objectives of preserving the right of labor organizations to bring pressure to bear on offending employers in primary labor disputes and of shielding unoffending employers and others from pressures in controversies not their own." N. L. R. B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 692, 71 S.Ct. 943, 953, 95 L.Ed. 1284.
 
 
 11
 Both sides to this controversy discuss the case of Seafarers International Union, etc. v. N. L. R. B., 105 U.S.App.D.C. 211, 265 F.2d 585. In that opinion the court stated at page 591: "But it is clear from the rest of the Act, especially from Section 13, that Congress did not intend to forbid picketing at a primary employer's premises, the situs of the dispute. Section 8(b) (4) must be interpreted and not merely read literally."
 
 
 12
 In Di Giorgio Fruit Corp. v. N. L. R. B., 89 U.S.App.D.C. 155, 191 F.2d 642, 649, 28 A.L.R.2d 377, trucks belonging to various trucking concerns were halted at a picket line by pickets endeavoring to persuade the drivers not to cross the line. The court said, "Such picketing activity is called a primary activity in the language of labor law." and held the primary activity shown by the evidence was not forbidden by the statute.
 
 
 13
 Both sides seem to take some comfort from N. L. R. B. v. International Rice Milling Co., 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1277. In that case pickets sought by oral and other inducement as well as by picket signs, to prevent a truck driver and his helper from crossing the picket line in order to pick up an order of goods from the employer whose premises were picketed. The court held that such picket line inducement did not violate Section 8(b) (4) (A) of the Act. However, some language used in that opinion is a bit puzzling. The court there stated, 341 U.S. at page 671, 71 S.Ct. at page 964: "A union's inducements or encouragements reaching individual employees of neutral employers only as they happen to approach the picketed place of business generally are not aimed at concerted as distinguished from individual, conduct by such employees. Generally, therefore, such actions do not come within the proscription of § 8(b) (4), and they do not here."
 
 
 14
 However, in a companion case handed down the same day, N. L. R. B. v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284, the court, in further explanation of its holding in International Rice Milling, stated at page 687, of 341 U.S., at page 951 of 71 S.Ct.: "There the accused union sought merely to obtain its own recognition by the operator of a mill, and the union's pickets near the mill sought to influence two employees of a customer of the mill not to cross the picket line. In that case we supported the Board in its conclusion that such conduct was no more than traditional and permissible in a primary strike."
 
 
 15
 The phraseology used in describing primary picket line activities varies. Sometimes it is referred to as primary rather than a secondary activity; again, individual rather than concerted action, and at times the courts refer to the "object" test. However, the courts seem to be in general agreement that Section 8(b) (4) (A) does not prohibit conduct on the picket line which is designed to secure observance of that line by employees of other employers who come to the picketed premises to make pickups or deliveries.
 
 
 16
 We hold that the picket line activities of Local 200 in endeavoring to persuade its members employed by other employers, were inextricably interwoven elements of the primary picket line itself, and were lawful under the Act.
 
 
 17
 Petitioners insist the activities of Local 200 amounted to a secondary boycott because neither it nor Local 743 made any attempt to induce the employees at the picketed premises to join the strike. Passing the fact that the employees of petitioner did refuse for two days to cross the picket lines, we do not think the lawfulness of efforts of members of a picket line to achieve observance of that line depends on whether employees who work behind the line are also the targets of its appeals. Indeed, peaceful picketing at the premises of a primary employer has been held lawful even when there were no primary employees in the area. Local 618, Automotive, Petroleum and Allied Industries Employees Union v. N. L. R. B., 8 Cir., 249 F.2d 332; Seafarers International Union, etc. v. N. L. R. B., 105 U.S.App. D.C. 211, 265 F.2d 585.
 
 
 18
 Petitioner relies upon cases which are not applicable to the situation before us. In N. L. R. B. v. United Steelworkers, 1 Cir., 250 F.2d 184, pickets followed a primary employer's truck to the premises of a neutral employer. Other cases such as Local 761, International Union of Electrical Workers, etc. v. N. L. R. B., 107 U.S.App.D.C. 402, 278 F.2d 282; United Brick and Clay Workers of America v. Deena Artware, 6 Cir., 198 F.2d 637, and Retail Fruit & Vegetable Clerks Union, Local 1017, etc. v. N. L. R. B., 9 Cir., 249 F.2d 591, involve a common work situs.
 
 
 19
 It was clearly the Congressional intent to protect neutral employers from work stoppages at their own places of business. Thus, picketing at a common work situs must be conducted "* * * with restraint consistent with the right of neutral employers to remain uninvolved in the dispute." Retail Fruit & Vegetable Clerks Union, Local 1017, etc. v. N. L. R. B., 9 Cir., 249 F.2d 591, 599. Where a common work situs exists, if the appeals of a union are directed at neutral employees rather than to the primary employees, there may well be a violation of the Act.
 
 
 20
 We think the legislative history of the 1959 amendments to the Act show approval of the decisions which have upheld the right of unions at a picket line to request deliverymen to respect that line. There is a proviso in the amendment, 29 U.S.C.A. § 158(b) (4) (B), "That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing." The House Conference Report stated, "The purpose of this provision is to make it clear that the changes in section 8(b) (4) do not overrule or qualify the present rules of law permitting picketing at the site of a primary labor dispute." H.R.Rep.No. 1147, 86th Cong., 1st Sess. 38 (1959), U.S.Code Congressional and Administrative News 1959, p. 2510.
 
 
 21
 The incidents where Local 200 attempted to persuade management of trucking firms (as distinguished from their employees) not to send trucks across the picket line, were not alleged to be unlawful in the complaint. Such incidents would not be within the scope of Section 8(b) (4) (A). Local 1976, United Brotherhood of Carpenters, etc. v. N. L. R. B., 357 U.S. 93, 99, 78 S.Ct. 1011, 2 L.Ed.2d 1186.
 
 
 22
 At the oral argument, counsel for petitioner invited attention to and relied upon a decision of the Board which was handed down August 9, 1960. McJunkin Corporation, 128 N.L.R.B. No. 57. This is a three to two decision by the Board. Some kind of a theory of "totality of effort" is there suggested whereby three incidents, by themselves lawful, become unlawful by an incident at another location. It is suggested that an overall plan was shown to accomplish a proscribed objective. If it should eventually be held that the McJunkin decision is contrary to the Board's holding in the instant case, it is interesting to note the chairman of the Board was on both sides of the question. However, we think McJunkin can be distinguished.
 
 
 23
 In McJunkin, the majority distinguishes the Board's decision in Interborough News Company, 90 N.L.R.B., 21, 35, on the ground that in McJunkin there was evidence that the Union was engaged in extensive "hot cargo" activities. In the instant case, there was no clearly unlawful activity such as going to a neutral situs or an extensive program to enforce "hot cargo" agreements.
 
 
 24
 The petition to review and set aside the Board's order dismissing the complaint of petitioner is
 
 
 25
 Denied.