15 N.Y.2d 181 (1965)
In the Matter of the Arbitration between Gerald Buchholz, Doing Business as Federal Tool and Instrument Co., Respondent, and Local 463, International Union of Electrical, Radio and Machine Workers, Appellant.
Court of Appeals of the State of New York.
Argued January 5, 1965.
Decided February 11, 1965.
Donald Grody for appellant.
Joseph M. Midler for respondent.
Chief Judge DESMOND and Judges DYE and SCILEPPI concur with Judge BURKE; Judge VAN VOORHIS concurs in the opinion of Judge BURKE upon the ground that the only basis for denying effect to the resignation of the employee Klementowicz prior to the election would be that his resignation had been compelled as a consequence of an unfair labor practice. That question was decided adversely to the contention of the union by the Labor Relations Board. Judge FULD dissents in an opinion in which Judge BERGAN concurs.
*183 BURKE, J.
The appellant, pursuant to a collective bargaining agreement, demanded arbitration as to "The Company's unjust discharge of Mr. Joseph Klementowicz on September 12, 1961". A motion to stay arbitration was denied. The Appellate Division has reversed and stayed the arbitration on the ground that the claim was submitted to and ruled on by the National Labor Relations Board.
We find that, after an issue of the alleged discharge of employee Klementowicz has been submitted by the appellant and decided under a National Labor Relations Board decertification election proceeding, the claim of discharge is no longer an open one and the parties shall not thereafter have any rights to submit a grievance on that particular issue to arbitration. The board, we think, made a final determination of such dispute. It found: "The Employer challenged the ballot of Joseph A. Klementowicz on the ground that the challenged voter had voluntarily quit his job on September 12, 1961, and accordingly is not eligible. On the day preceding the election, Petitioner filed a charge alleging that the Employer discharged said employee for Union activity. The said charge has been dismissed and consequently it must be concluded that Klementowicz was no longer an employee of the Employer when the election was held and hence was not an eligible voter. It follows that the challenge to the ballot of Klementowicz should be sustained."
This finding makes it clear that no bona fide or undetermined dispute presently exists.
The evidence before the National Labor Relations Board showed that Klementowicz was hired by the respondent on June 5, 1961. On July 13 another employee filed a petition with the National Labor Relations Board for the purpose of decertification of the appellant as collective bargaining representative. On September 7, 1961 Klementowicz received a telegram from Curtiss-Wright recalling him to his job with that company. On Friday, September 8, he underwent a physical examination at Curtiss-Wright and agreed to report on September 18. The challenge by the respondent to the ballot of Klementowicz was *184 based on the fact that he notified the company of his resignation on Saturday, September 9, terminating his employment on Tuesday, September 12, two days before the election to be held on Thursday, September 14.
On September 13, the day immediately preceding the decertification election, the appellant by its business agent filed two grievances with the National Labor Relations Board. One dealt with an alleged discharge of Klementowicz. It read "In violation of the contract Joseph Klementowicz has been discharged without cause. Immediate reinstatement with full back pay is requested" (emphasis added). This is the same contract grievance which the appellant now seeks to arbitrate.
Appellant also filed an unfair labor practice charge covering the same grievance alleging he was discharged for union activity. In its reply to these charges the respondent advised the National Labor Relations Board that Klementowicz had voluntarily resigned his job with the respondent. After investigation, the unfair labor practice charge was dismissed. Appellant appealed to the General Counsel. This appeal was dismissed and the determination of the Regional Director affirmed.
Appellant also attempted to have Klementowicz vote in the election. His sealed ballot was held by the National Labor Relations Board pending investigation of the challenge filed by the employer. Letters were submitted by appellant and respondent. Respondent recited facts in support of the challenge which it alleged proved that Klementowicz had voluntarily quit his job. The letter of appellant, after noting that the unfair labor charge had been dismissed, closed with this statement:
"Thus, whether or not the Company acted with discriminatory animus against Mr. Klementowicz in terminating him, his discharge was nevertheless patently `without just cause', within the meaning of the contract and occurred at a time when there was ample work available for him. Indeed, Mr. Klementowicz had worked overtime the previous Saturday.
"4. It is my considered judgment on the basis of an extensive experience in labor arbitrations that the ultimate reinstatement of Mr. Klementowicz with full back pay through an arbitration award is virtually assured. Accordingly, it is respectfully requested that should the Regional Director not be inclined to subject the challenge to Mr. Klementowicz' ballot on the basis *185 of the available evidence, the decision on this challenge be deferred until an award has been rendered in the pending arbitration case."
When the challenge of the respondent was upheld with the finding of the National Labor Relations Board set forth above, the appellant sought a review. In that letter it said: "We will not at this time attempt to indicate any grounds which we believe are sufficient for countering the company's contention in the New York State Supreme Court. We are concerned in achieving justice and equity under the National Labor Relations Act. We were of the opinion that such was forthcoming, having had an informal assurance that the Regional Director's determination of the challenge to Mr. Klementowicz's ballot in the September 14, 1961 election will be held pending the arbitration. The notice received by this office sustaining the objection and decertifying Local 463 as bargaining representative is an obvious repudiation of these assurances which we so strongly relied upon. * * * We submit that unless the Regional Director is required to withdraw his substantiation to the challenge of the aforementioned ballot and withdraw his finding that a majority of Federal Tool & Instrument employees have not chosen Local 463 to act as their bargaining representative, inequities and injustice then become the fruits of anti-union activity."
If the union believed that the issue in the arbitration proceedings was different from the issue before the Regional Director it would not have sought to have the decision deferred. The issue of resignation involved in the decision on the employee's challenged ballot was squarely presented to the Regional Director. The employer stated that its challenge was based upon the fact that the employee had voluntarily resigned before the election. The union, on the other hand, alleged that he had not resigned at that time, and he did not intend to resign until after the election, since he had agreed to return to his old job at Curtiss-Wright after the election had been held. Thus the Regional Director could not have decided whether Klementowicz' ballot should be counted unless he first decided whether Klementowicz resigned voluntarily or was discharged by the employer in violation of rights derived under the collective bargaining contract.
*186 Here the issue is the same, i.e., whether or not the employee was properly dismissed (which would include his voluntary resignation) according to the provisions of his employment rights under the collective bargaining contract. This is so because originally, as we said, the union not only asserted that the dismissal amounted to an unfair labor practice, but also charged that the employee's contract rights had been violated by the allegedly wrongful dismissal. The unfair labor practice charges were dismissed but this concededly does not resolve all the questions raised by the alleged wrongful dismissal. We agree that it is possible that a discharge could be in violation of the employee's contract rights and not amount to unlawful discrimination for union activity as would be prohibited by the National Labor Relations Act. Had the investigation and dismissal of the unfair labor practice charge been the only question resolved by the National Labor Relations Board procedure in this case, the arbitration of the contractual aspects of the alleged dismissal would necessarily be viewed by us in a much different light. It would appear that in such a case the contract violation issue would not be decided by the National Labor Relations Board and could properly be the subject of arbitration or court action under the collective bargaining contract. However, such is not the situation before us.
Decisions of the National Labor Relations Board and the Federal courts are here not apposite, as we are not here deciding whether or not the Federal labor legislation prohibits a court or arbitrator from considering the issue of Klementowicz' alleged discharge. We are not here concerned with pre-emption, but rather with the question of whether or not we will hold open our tribunals, our courts and our arbitration rooms for the adjudication of an issue which has been considered and resolved by this competent National labor tribunal. Both parties in this arbitration proceeding were before the Regional Director in the decertification proceedings, both sides were heard and the issue raised in the present proceedings was examined and decided by the Regional Director when he sustained the employer's challenge to Klementowicz' ballot. Under these circumstances the grievance alleging an unjust discharge is no longer an open question and may not now be submitted to the arbitrators.
*187 The order of the Appellate Division should be affirmed, with costs.
FULD, J. (dissenting).
In my view, the issue sought to be arbitrated is materially different from the issue decided by the National Labor Relations Board. Whereas the board was called upon to determine merely whether the employer Buchholz had committed an unfair labor practice  had, in other words, fired the employee Klementowicz for union activity  the issue posed for the arbitrator is whether the employer wrongfully discharged the employee in violation of the provisions of the collective bargaining agreement. The board had no power to consider this latter question and did not purport to decide it and, since the arbitrator could properly find that the employer wrongfully discharged the employee under the collective agreement, the arbitration should be allowed to proceed.
On September 13, 1961 the appellant union filed an unfair labor practice charge with the board asserting that Klementowicz was discharged for union activities in violation of section 8 (subd. [a], pars. [1], [3]) of the National Labor Relations Act (hereafter designated NLRA). The employer contended that the employee had voluntarily quit his job. Two weeks later, the Regional Director notified the appellant that there was insufficient evidence that the employer had violated any provision of the NLRA. The General Counsel's Office, to which an appeal was taken, sustained the Regional Director's determination; it was also the General Counsel's conclusion that there was insufficient evidence to establish that Klementowicz' separation from his employment was attributable to discriminatory considerations.
On September 14, the day following the filing of the unfair labor practice charge with the board, a decertification election was held in the employer's plant. Klementowicz having voted, the employer challenged his ballot on the ground (previously asserted) that he had voluntarily quit and was, therefore, no longer an employee. Since the challenged ballot turned out to be determinative of the outcome of the election, the board was required to decide whether it should be counted. Under the NLRA, an employee includes an individual whose discharge was *188 the result of an unfair labor practice (§ 2, subd. 3). On October 23, 1961 the board rendered a decision holding that the earlier dismissal of the union's charge that the employer had fired Klementowicz "for Union activity" required the conclusion that he was not an employee at the time of the election:
"The Employer challenged the ballot of Joseph A. Klementowicz on the ground that the challenged voter had voluntarily quit his job on September 12, 1961, and accordingly is not eligible. On the day preceding the election, Petitioner filed a charge alleging that the Employer discharged said employee for Union activity. The said charge has been dismissed and consequently it must be concluded that Klementowicz was no longer an employee of the Employer when the election was held and hence was not an eligible voter. It follows that the challenge to the ballot of Klementowicz should be sustained."
An employer may, of course, be guilty of a violation of a collective bargaining agreement without committing an unfair labor practice (see, e.g., Textile Workers v. Lincoln Mills, 353 U. S. 448, 452; Sinclair Refining Co. v. Atkinson, 370 U. S. 195, 207) and, consequently, it is important, for present considerations, to bear in mind that the question posed for the board's determination, in a proceeding involving an unfair labor practice charge or in a decertification proceeding, is not whether the employee's discharge was a breach of the collective agreement but, rather, whether the termination of his employment was due to the employer's anti-union bias. And, if the board does not find that the termination was owing to an unfair labor practice, the discharged person will not be considered an employee for the purpose of the decertification proceeding even though  and this is vital in this case  even though the employer's act of terminating the employment may have been a breach or violation of the collective agreement. (See, e.g., Minneapolis Knitting Works, 84 N. L. R. B. 826; Whitin Mach. Works, 100 N. L. R. B. 279; Dura Steel Prods. Co., 111 N. L. R. B. 590; Continental Baking Co., 122 N. L. R. B. 1074.)
When, then, in the present case, the Regional Director (in October, 1961) sustained a challenge to the employee's ballot, the *189 only question which the Director could determine, under well-established board decisions (see cases cited just above), was whether Klementowicz' employment had been terminated because of an unfair labor practice. And this was so, even though, as previously indicated, the employer contended that the employee had been discharged because he misconducted himself on the job or, indeed, had actually quit voluntarily. More specifically, the board's rule in representation cases (in 1961), when issues were raised as to discharged employees, was (1) that, where no unfair labor practice charge had been filed and no grievance (or arbitration) proceeding was pending, the discharge was presumed to be for cause (see Minneapolis Knitting Works, 84 N. L. R. B. 826, supra);[1] (2) that, where an unfair labor practice charge had been filed but no grievance proceeding was pending, the Regional Director was required to follow the General Counsel's ruling on the unfair labor practice charge (see Times Square Stores Corp., 79 N. L. R. B. 362, 365); and (3) that, where no unfair labor practice charge had been filed but the matter was pending in a grievance proceeding, the discharged employee  under the board's decision in Dura Steel Prods. Co. (111 N. L. R. B. 590, supra)  was not eligible to vote "because of the presumptive validity" of the termination. (Continental Baking Co., 122 N. L. R. B. 1074, 1076, n. 5, supra.) And this was so even though, as a result of the arbitral award, he might later be restored to the employer's payroll pursuant to a finding that his discharge offended against the terms of the collective agreement. (See Continental Baking Co., 122 N. L. R. B. 1074, supra.)
In short, then, the Regional Director in the case before us, following settled board holdings, did not  contrary to the *190 majority's premise  decide whether the termination of Klementowicz' employment was a voluntary quit. The simple fact is that the Director had no alternative but to follow the prior ruling made by the General Counsel dismissing the unfair labor practice charge. (See Times Square Stores Corp., 79 N. L. R. B. 362, 365, supra.) The decision in the decertification proceeding, in other words, meant only that, because of the prior dismissal of the union's charge, Klementowicz would not be considered an employee eligible to vote. (See Dura Steel Prods. Co., 111 N. L. R. B. 590, supra; cf. Aircraft & Eng. Maintenance Employees v. Schilling Co., 340 F.2d 286 [5th Cir.]; United Brick & Clay Workers v. Deena Artware, 198 F.2d 637 [6th Cir.].)
In July, 1962, some nine months after the Regional Director's decision in the decertification proceeding, the rule in Dura was modified by Pacific Tile & Porcelain Co. (137 N. L. R. B. 1358). The overturning of the Dura rule did not, however, mean that the board adopted a rule under which it would determine, in a representation proceeding, whether the employee was discharged for cause or whether he voluntarily quit. In the Pacific Tile case (137 N. L. R. B. 1358, supra), the board merely held that it would defer its decision as to eligibility to vote until the arbitrator in pending grievance proceedings had issued his award with respect to the propriety of the discharge under the terms of the collective agreement. Indeed, the Supreme Court had occasion to remark this rule in the course of its opinion in Carey v. Westinghouse Corp. (375 U. S. 261). After noting that "The Board's action and the awards of arbiters are at times closely brigaded", the court went on to point out (p. 271) that, "where grievance proceedings are pending before an arbiter, the Board defers decision on the eligibility of discharged employees to vote in a representation case, until the awards are made. See Pacific Tile & Porcelain Co., 137 N. L. R. B. 1358, 1365-1367, overruling Dura Steel Products Co., 111 N. L. R. B. 590. See 137 N. L. R. B., p. 1365, n. 11."
It impresses me as extraordinary, and most unfair, to stay arbitration in a case where the board has never determined the issue sought to be submitted to the arbitrator, particularly where, under current board decisions, the arbitral award is an essential prerequisite to a determination in a decertification *191 proceeding (by the board) as to the validity of an employee's ballot. Consequently, refusal to allow arbitration in this case actually deprives the employee of his contractual right to have the question whether his discharge was wrongful under the collective agreement considered and passed upon. (See Glass Bottle Blowers Assn. v. Arkansas Glass Con. Corp., 183 F.Supp. 829, 831.) Such a result cannot be countenanced under any principle of law or justice.
I would, therefore, reverse the order appealed from and direct that arbitration proceed.
Order affirmed.
NOTES
[1] In Minneapolis Knitting Works (84 N. L. R. B. 826, supra), the board stated (p. 830): "It appears that the 5 challenged voters had been discharged before the date of the election. The issue as to whether or not their discharges were made in accordance with the contract between the Employer and the Intervenor is one that can be decided only by interpreting the provisions of that contract. We do not believe it to be our function to decide in this proceeding whether the 5 laid-off employees were discharged rightfully or wrongfully; it is sufficient for our purposes here that their employment was in fact definitely terminated, and that no unfair labor practice charges have been filed concerning them. We therefore find that the challenges should be, and they hereby are, sustained."