443 F.2d 627
 77 L.R.R.M. (BNA) 2607, 65 Lab.Cas. P 11,814
 Ralph E. KENNEDY, Regional Director of Region 21 of the
National Labor Relations Board, for and on behalf
of the NATIONAL LABOR RELATIONS BOARD,
Appellee, Petitioner,
v.
TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS, LOCAL 542,
Appellant, Respondent.
 No. 26426.
 United States Court of Appeals, Ninth Circuit.
 June 4, 1971.
 
 Jerry Williams (argued), Richard D. Prochazka, H. Ronald Domnitz, of Brundage, Williams & Zellman, San Diego, Cal., for appellant.
 Milo V. Price (argued), Attorney, N.L.R.B., Los Angeles, Cal., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Julius G. Serot, Asst. Gen. Counsel, N.L.R.B., Washington, D.C., for appellee.
 Before DUNIWAY, ELY, and TRASK, Circuit Judges.
 ELY, Circuit Judge:
 
 
 1
 This is an appeal from an injunctive order of the District Court, entered pursuant to Section 10(l) of the National Labor Relations Act, 29 U.S.C. 160(l). The proceedings below arose from a charge of unfair labor practices, filed by Shaker Express Delivery Service (Shaker) against the appellant (Union) with the National Labor Relations Board (Board). After investigation, appellee Kennedy, Regional Director for the Board, concluded that there was reasonable cause to believe that the Union had engaged in secondary boycott activity prohibited by Section 8(b)(4)(B) of the Act, 29 U.S.C. 158(b)(4)(B), and that a complaint by the General Counsel of the Board should issue. Accordingly, Kennedy filed a petition for injunctive relief in the District Court, urging that the alleged unfair labor practices be enjoined, pursuant to Section 10(l), pending final disposition of the proceedings before the Board. The District Court issued an Order to Show Cause and, upon its examination of briefs, affidavits, and exhibits, and after hearing oral argument, concluded that an injunction should issue. The Union appeals. We affirm.
 
 
 2
 Appellate review of Section 10(l) proceedings in the District Court is sharply limited:
 
 
 3
 'Section 10(l) of the Act * * * establishes a procedure by which a district court, upon application by the Board, may grant a preliminary injunction against an alleged unfair labor practice pending final adjudication of the controversy by the Board. All that is required under Sec. 10(l) for a regional director to petition for such an injunction is reasonable cause to believe an unfair labor practice is being committed. The preliminary injunction should be granted by the court if the court finds that the factual allegations and the propositions of law underlying the regional director's petition are not insubstantial and frivolous so that he has reasonable cause for believing the Act has been violated, and if the court finds that injunctive relief is appropriate. On appeal, review is limited to a determination of whether the district court's findings are clearly erroneous.'
 
 
 4
 San Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541, 544-545 (9th Cir. 1969).
 
 
 5
 Furthermore,
 
 
 6
 ,'section 10(l) reflects a Congressional determination that the unfair labor practices enumerated therein are so disruptive of labor-management relations and threaten such danger of harm to the public that they should be enjoined whenever a district court has been shown reasonable cause to believe in their existence and finds that the threatened harm or disruption can best be avoided through an injunction.'
 
 
 7
 Retail Clerks Union, Local 137 v. Food Employers Council, Inc., 351 F.2d 525, 531 (9th Cir. 1965).
 
 
 8
 We cannot say that the District Court's injunction was based on 'clearly erroneous' findings; therefore, the quoted principles are dispositive.
 
 
 9
 The District Court found that the Regional Director had reasonable cause to believe that the Union had violated Section 8(b)(4)(b) of the Act. The Regional Director's factual contentions[1] were supported by some nine affidavits, and the legal proposition applied by the court finds support in numerous cases. See, e.g., United Steel Workers of America, AFL-CIO (Tennessee Coal & Iron Division of United States Steel Corp.), 127 NLRB 823, enf'd as modified, 111 U.S.App.D.C. 60, 294 F.2d 256 (1961); NLRB v. Dallas General Drivers, Local 745, 281 F.2d 593, modified on denial of rehearing, (5th Cir. 1960), cert. denied, 365 U.S. 826, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961); United Brick & Clay Workers fo America v. Deena Artware, Inc., 198 F.2d 637 (6th Cir.), cert. denied, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694 (1952).
 
 
 10
 While the Union maintains that such picketing and other activities that occurred are lawful, and filed its own memorandum of points and authorities and counter affidavits in the District Court, it was not for the District Court, at this stage, to resolve either the factual disputes or the legal issues involved. Those are for the Board. Warehousemen's Union Local 6 v. Hoffman, 302 F.2d 352 (9th Cir. 1962). It is enough that the District Court reasonably believed that the allegations of the Regional Director's petition had been prima facie established. Madden v. International Hod Carriers, 277 F.2d 688 (9th Cir.), cert. denied, 364 U.S. 863, 81 S.Ct. 105, 5 L.Ed.2d 86 (1960); Kennedy v. Sheet Metal Workers, Local 108, 289 F.Supp. 65 (C.D.Cal.1968).
 
 
 11
 The Union's contention that it was denied due process by the failure of the District Court to allow oral testimony to be presented at the hearing is without merit. San Francisco-Oakland Newspaper Guild v. Kennedy, supra; Kennedy v. Sheet Metal Workers, supra. Equally without merit is the Union's contention that it was denied due process by the District Court's denial of its motion for a continuance and by the failure of the Regional Director to file and serve his memorandum of points and authorities and affidavits in support of his petition for injunction simultaneously with the filing of the petition itself. Kennedy v. Sheet Metal Workers, Supra; Schauffler v. Local 1291, I.L.A., 189 F.Supp. 737 (E.D.Pa.1960).
 
 
 12
 Affirmed.
 
 
 
 [1]
 The court concluded that the Regional Director had reasonable cause to believe, inter alia, that:
 
 
 [1]
 Shaker, a California corporation, is an air freight delivery service, doing business at Lindbergh Field in San Diego. Although the Union had not been certified by the Board as the representative of the employees of Shaker under the provisions of 29 U.S.C. Sec. 159, it demanded that Shaker recognize and bargain with it as the representative of such employees. Shaker declined and filed with the Board a petition for an election to determine the collective bargaining representative of its employees. As a consequence of Shaker's refusal to recognize and bargain with it, the Union engaged itself in a labor dispute with Shaker
 
 
 [2]
 Prior to the Union's demands for recognition and bargaining, Shaker had contracted for the construction of new freight facilities, adjacent to where its facilities were then located. Its contract was made with Nielsen Construction Company (Nielsen), a general contractor. Nielsen subcontracted portions of the work to various subcontractors in the building and construction industry
 
 
 [3]
 Airborne Freight Corporation (Airborne) is engaged at San Diego, among other places, as an air freight forwarder. Shaker has regularly performed air freight delivery services for Airborne. Griely Security Freight Lines (Griely) is engaged at San Diego as a common carrier of freight by motor vehicle. Airborne has regularly utilized Griely's freight pickup and delivery services in the San Diego area. Weston Trucking Company (Weston) is engaged at San Diego as a common carrier of freight by motor vehicle, and has regularly performed freight pickup and delivery services for American Airlines
 
 
 [4]
 On or near April 7, 1971, and in furtherance and support of its labor dispute with Shaker, the Union commenced picketing at and in the vicinity of the freight handling area of Shaker, which is at the rear of and adjacent to the construction project. The Union also picketed in front of and at the entrance to the construction project, although employees of Shaker were not, and had not been, engaged in work at the construction project. As a consequence of the picketing of the construction project and of oral appeals by the Union's representatives, individuals employed by Nielsen and by its subcontractors engaged in a work stoppage, and the construction work virtually shut down. On or about April 7, 1970, the Union also addressed a letter to Western Airlines, threatening to take economic action against Western if Western continued to do business with Shaker. And on or about the same day, the Union threatened Western Airlines with picketing unless Western Airlines ceased doing business eith Shaker. On or about April 8, 1970, the Union orally appealed to, instructed and dirceted a driver engaged by Griely not to handle freight for Airborne so long as Airborne continued to do business with Shaker, and on or about April 9, 1970, the Union orally appealed to, induced, encouraged, instructed and directed an individual employed by Weston not to pick up from or deliver to Shaker any freight, and threatened such individual with picketing of the Weston truck if Weston did business with Shaker
 
 
 [5]
 On or about April 7, 1970, the Union threatened Nielsen with continued picketing of the construction project, and on or about April 8, 1970, one Thomas Rogers, the Union's business representative, threatened an individual employed by Nielsen at the construction project with physical violence, and orally instructed, directed and appealed to such individual to engage in a work stoppage